IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

HOWARD NELSON,

           **Plaintiff,**

v.                                               Case No. 19-CV-379-JFH-JFJ

SOUTHWESTERN BELL
TELEPHONE COMPANY,

           **Defendant.**

## ORDER AND OPINION

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Southwestern Bell Telephone Company ("SWBT").[1] Dkt. No. 31. The case arose after SWBT terminated the employment of Plaintiff Howard Nelson ("Plaintiff"). Dkt. No. 2-1. For the reasons set forth below, the Court grants SWBT's Motion.

## STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir.

---

[1] Plaintiff originally filed suit against SWBT and AT&T, Inc., in Tulsa County District Court on June 14, 2019. *Id.* The case was removed to this Court on July 10, 2019. Dkt. No. 2. Plaintiff later filed an amended complaint naming only SWBT, not AT&T, as the Defendant. Dkt. No. 10.

2016).  Only material factual disputes preclude the entry of summary judgment.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671.  If the nonmovant demonstrates a genuine dispute as to material facts, the Court views the facts in the light most favorable to him.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  However, a failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## UNDISPUTED MATERIAL FACTS

SWBT hired Plaintiff in 1999 as a customer service technician in Tulsa, Oklahoma.  Dkt. No. 31-5 at 24:19-25.  Customer service technicians install and repair wires, cables, poles, and other hardware related to telephone service.  *Id.* at 47:22-54:2.  To perform these jobs, customer technicians must at various times climb telephone poles, carry heavy equipment, go inside businesses and residences, bend and crawl in tight spaces, squat, stoop, and dig.  *Id.*; Dkt. No. 31-1 at 30.  Plaintiff was injured while working in 2010, when he slipped on ice getting out of his truck and injured his back and knee.  Dkt. No. 31-5 at 38:2-24.  He filed a workers' compensation claim and applied for both short-term and long-term disability benefits, which he received from February 2010 to January 2011 and January 2011 to June 2018, respectively.  *Id.*; Dkt. No. 31-3

at ¶ 4. Plaintiff did not perform any work for SWBT after November 2010 while on long-term disability. Dkt. No. 31-1 at ¶ 13.

In May 2016, Plaintiff's physician issued permanent return-to-work restrictions which prohibited him from squatting, kneeling, crawling, climbing stairs, or climbing ladders. Dkt. No. 38-2. SWBT's third-party benefits administrator learned of these restrictions in June 2016. Dkt. No. 31-2 at ¶ 6. Plaintiff and SWBT then discussed his permanent restrictions and concluded that he could not perform the job requirements of a customer service technician. *Id.* at ¶ 7. SWBT offered Plaintiff a medical job search, where an "employee is given 90 days to search for open and available lateral or downgrade positions within his collective bargaining agreement that would accommodate [his] restrictions and for which he is qualified." *Id.* On October 20, 2016, an SWBT employee emailed to determine when Plaintiff's 90-day window would end such that he should be removed from payroll. Dkt. No. 38-15.

SWBT's talent acquisition department identified a job opening for a customer service representative in sales and let Plaintiff know of the opportunity. Dkt. No. 31-2 at ¶ 9. The application for this sales position required candidates to receive a score of at least 500 on a "customer experience assessment." *Id.*; Dkt. Nos. 38-7, 38-8. This assessment "target[ed] nine core competencies linked by decades of research to a variety of service and sales outcomes" and "reflect[ed] the extent to which a candidate's responses to elements of the assessment are similar to (or different from) the competency profile associated with incumbent top performers in this position at the time of the assessment configuration." Dkt. No. 38-10. Although Plaintiff's 90-day job search window expired on October 24, 2016 [Dkt. No. 38-14], SWBT allowed Plaintiff to take this assessment on October 28, 2016. Dkt. No. 38-8. He scored 498, two points short of the

required threshold for the sales representative position. *Id.* Reasons given for Plaintiff's score included:

- This candidate did not take much time responding to most of the scenario items . . . and this really hurt his scores on some competencies – his response patterns on these items suggest that he did not read or follow the instructions to respond to each option in each scenario.

- This candidate also indicated not having much experience with four of the past experience prompt; this also contributed to his overall scores on four of the competencies.

  o "Persuade a customer that the course of action you were recommending was the right one" (response = Never)

  o "go to multiple sources (examples: other employees, internet, manuals, to find information for a customer" (response = Rarely)

  o "deal with upset or angry customers" (response = Rarely)

  o "correct a mistake that was made by another employee" (response = Rarely)

- The candidate's weaker competencies (based on the responses he provided) were Motivation and Interest, Proactivity, Self-efficacy, and Influence Ability. Collectively, these contributed to his Overall score being below the [] cut-score of 500 that was in place on 10/28/2016.

Dkt. No. 38-8. After Plaintiff did not secure a new job during the 90-day window and did not achieve the benchmark score required for the vacant sales position, internal emails were exchanged at SWBT regarding terminating Plaintiff's employment. Dkt. No. 38-12. One of these emails briefly referenced Plaintiff's 2010 workers' compensation claim with the sentence "I know this case was complex, due to the WC claim, however we did vet this with our COE partners and separation was supported." *Id.* SWBT terminated Plaintiff's employment effective December 2, 2016. Dkt. No. 31-1 at ¶ 11. When he was terminated, he had not performed any work for SWBT

since November 2010, shortly after his injuries. *Id.* at ¶ 13. Plaintiff has been unable to work at all because of his disability since his termination from SWBT. Dkt. No. 31-5 at 25:21-24.

## AUTHORITY AND ANALYSIS

I. **ADA Discrimination**

A plaintiff may prevail on a claim under the Americans with Disabilities Act ("ADA") by providing either direct or indirect evidence of discrimination. *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 920 (10th Cir. 2012). Direct evidence of discrimination "is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007). Stated differently, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007). In this case, Plaintiff has not presented any direct evidence of disability discrimination.

Absent direct evidence of discrimination, the Court will apply *McDonnell Douglas* burden shifting applies to Plaintiff's ADA discrimination claim. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019). Under this framework, a plaintiff has the initial burden on summary judgment of demonstrating a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Tenth Circuit has explained that "'articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim,' [but] '[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969-70 (10th Cir. 2017) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). In the post-amendment ADA context, the test is generally articulated

as requiring proof that the plaintiff "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Tesone*, 942 F.3d at 995 (quoting *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)).

After the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802-03. This burden is "'exceedingly light,' as its stated reasons need only be legitimate nondiscriminatory 'on their face,'" *DePaula*, 859 F.3d at 970 (quoting *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 899-900 (10th Cir. 2017) and *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011)). If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely "pretextual." *McDonnell Douglas*, 411 U.S. at 804-05.

"The plaintiff bears the ultimate burden of persuasion to show discrimination" at this third stage and must demonstrate pretext by showing "the proffered reason is factually false," the "discrimination was a primary factor in the employer's decision," or "the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff." *DePaula*, 859 F.3d at 969-70 (quotations and citations omitted). Pretext is often shown "'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (quoting *Tabor v. Hilti, Inc.*, 704 F.3d 1206, 1216 (10th Cir. 2013)). At the same time, however, the Court "may not second guess the business judgment of the employer." *Dewitt v. Sw. Bell Tel. Co.*, 845

F.3d 1299, 1307 (10th Cir. 2017) (quotation omitted).  "Instead of asking whether the employer's reasons 'were wise, fair, or correct,' the relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.'" *DePaula*, 859 F.3d at 971 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007)).

Plaintiff concedes that he was not qualified to perform the duties of his original technician job.  Dkt. No. 38 at 10.  Rather, the parties' dispute centers on whether Plaintiff was qualified to perform the sales representative job for which he applied.  SWBT cites Plaintiff's deposition testimony that he was not qualified to perform *any* work, as well as his long-term disability paperwork and the assessment he completed as part of his application.  Plaintiff claims he was arbitrarily deprived of the opportunity to work the sedentary sales job.

The Court first notes that its inquiry properly includes the sedentary sales role even though Plaintiff was never hired into that position:

> Although a "qualified individual with a disability" has to be someone who can perform the essential functions of a job, that inquiry is not limited to the employee's existing job.  Rather, the plain language of the statute includes an employee who has the ability to do other jobs within the company that such disabled employee "desires."  To read the ADA otherwise, would render the word "desires" meaningless, and we must avoid such a construction.

*Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161 (10th Cir. 1999) (citing 42 U.S.C. § 12111(8)).  "[A]t the summary judgment stage, the plaintiff-employee bears the burden of specifically identifying a vacant position, reassignment to which would serve as a reasonable accommodation." *Duvall v. Georgia–Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1263 (10th Cir. 2010) (citing *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999)).  Reassignment is only available "if the employee is qualified for the job and it does not impose an undue burden on the employer." *Taylor*, 196 F.3d at 1110 (citing *Smith*, 180 F.3d at 1169).  Only the first of these two requirements is at issue here.

As part of his application, Plaintiff took a "customer experience assessment" and failed to meet its required 500-point threshold. Plaintiff claims that he was qualified in fact for the job but was subject to an arbitrary scoring process which yielded a score of 498, arguing that it was "ludicrous that [he] was allegedly deemed unqualified for the [] job based on scoring .4% below an arbitrarily set benchmark." Dkt. No. 38 at 10.

An employer may "establish what a job is and what is required to perform it" as long as any "necessary job specification is job-related, uniformly enforced, and consistent with business necessity." *Hennagir v. Utah Dep't of Corrs.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003)). If "qualification standards, employment tests, or other selection criteria [] 'screen out or tend to screen out an individual or class of individuals with disabilities,'" the Court must examine whether the criteria are "'job-related for the position in question and [] consistent with business necessity.'" *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012) (quoting 42 U.S.C. § 12112(b)(6)).[2]

---

[2] The Tenth Circuit generally conducts this examination through a seven-factor test called an "essential function analysis," which involves:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

*Id.* Little information exists in the record about several of these criteria. Nevertheless, the information before the Court is minimally sufficient to consider whether SWBT's requirements were "job-related for the position in question and [] consistent with business necessity." *Id.*

8

Plaintiff protests that SWBT's assessment was "subjective and arbitrary" because it was "tailored and weighted for a given position." Dkt. No. 38 at 5, 10, 12 (citing Dkt. No. 38-10). The "tailored and weighted" language Plaintiff quotes appears in a third-party document from the test administrator. Dkt. No. 38-10. It does not appear to be an SWBT document and does not indicate that any "tailoring" or "weighing" was performed by any individuals who may have had discriminatory animus toward Plaintiff. In fact, Plaintiff introduces no evidence of any manipulation or inconsistent application of the assessment criteria. Nor does he claim that his score was negatively impacted by his disability. He claims only that the "500-point benchmark is completely arbitrary and was selected by [SWBT]" because "[i]t's unclear, even from Plaintiff's Sales Excellence Profile Report and Candidate Performance Review, how Plaintiff's score resulted in a 498." *Id.* at 10.

The Court disagrees. The two documents Plaintiff cites provide clear job-related explanations consistent with business necessity. The Candidate Performance Review[3] indicates Plaintiff's "response patterns . . . suggest[ed] that he did not read or follow the instructions to respond to each option in each scenario." Dkt. No. 38-8. The report explained that "[t]his type of extreme responding generally deflates candidate scores on this assessment." *Id.* It also noted Plaintiff did "not [have] much experience with four of the past experience prompts," which "contributed to his overall scores." *Id.* Specifically, Plaintiff—who was applying for a sales associate job—reported that he had never "persuade[d] a customer that the course of action [he was] recommending was the right one" and rarely had "go[ne] to multiple sources . . . to find information for a customer," "deal[t] with upset or angry customers," or "correct[ed] a mistake

---

[3] The Sales Excellence Profile Report is effectively a quantitative restatement of the qualitative Candidate Performance Review. Dkt. No. 38-9.

9

that was made by another employee." *Id.* Further, Plaintiff demonstrated "weaker competencies" in motivation/interest, proactivity, self-efficacy, and influence ability, which "[c]ollectively . . . contributed to his Overall score being below the [] approved cut-score of 500." *Id.*

The Court must "weigh heavily the employer's judgment regarding whether a job function is essential." *Hennagir*, 587 F.3d at 1262. The assessment at issue reflects SWBT's judgment regarding essential functions for a sales associate. No reasonable jury could conclude, based on the evidence before the Court, that the test screened out Plaintiff for a discriminatory reason. Under the criteria SWBT set, Plaintiff was not qualified for the sales associate job. Because Plaintiff admits he was not qualified for his former job, admits he has been fully disabled since the end of his former job, and cannot establish that he was qualified for the vacant position identified, his prima facie case fails at its second element. Summary judgment is appropriate.

## II. ADEA Disparate Impact and Termination

Plaintiff's amended complaint contains a claim for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Although SWBT's opening brief contains an ADEA argument, Plaintiff's response brief lacks one. Dkt. No. 31; Dkt. No. 38. The Court has two paths to resolving this question. Both lead to summary judgment for SWBT.

Some courts—including at least one in this district—take the position that failure to respond to an argument in a summary judgment response brief is a sign of abandonment of a claim. *See, e.g., Bowers v. Med. Park Ctr. Pharm.*, No. 07-CV-471-TCK-SAJ, 2009 WL 2916893, at *6 (N.D. Okla. Sept. 4, 2009). This position finds some support from the Tenth Circuit in an unpublished decision. *See Hinsdale v. City of Liberal, Kan.*, 19 Fed. App'x 749, 768-69 (10th Cir. 2001) (citing *Coffee v. Healthtrust, Inc.*, 955 F.2d 1388 (10th Cir. 1992) (holding that a failure to rebut arguments raised at summary judgment is fatal to attempts to raise and rebut such arguments

on appeal)). At the same time, however, "a party's failure to file a response to a summary judgment is not, by itself, a sufficient basis on which to enter judgment against the party." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). The Court must still examine the record to determine whether the moving party has met its responsibility to demonstrate the absence of a genuine issue of material fact. *Id.* at 1194. SWBT has met this burden.

To prove disparate impact under the ADEA, Plaintiff would need to demonstrate an impact on a protected group. *See Fulghum v. Embarq Corp.*, 785 F.3d 395, 418 (10th Cir. 2015). This sort of impact is usually shown through statistical evidence. *Id.* SWBT highlights that Plaintiff presents no such evidence. And to prove termination in violation of the ADEA, Plaintiff must be qualified for the job he claims he was unlawfully denied. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010).[4] As discussed, Plaintiff was not qualified for either his previous technician job or his desired sales representative job. These failures of proof render all other facts immaterial and necessitate summary judgment. *See Celotex*, 477 U.S. at 322-23.

### III. Oklahoma Retaliatory Discharge

Plaintiff also claims his termination violated Oklahoma law. Although the statutory scheme Plaintiff cites—85 O.S. § 301 *et seq.*—has been repealed, it was in effect on the date of his injury and thus applies. *See Hopson v. Exterran Energy Sols., LP*, 417 P.3d 1194, 1195 (Okla. 2018). To prevail, Plaintiff must establish "(1) employment; (2) on-the-job injury; (3) medical

---

[4] Moreover, an ADEA claim requires but-for causation. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009); *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010); *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985). While a plaintiff does not have to show that age was the sole factor in his termination, he must show that "age was the factor that made a difference." *Jones*, 617 F.3d at 1277 (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010)). The evidence before the Court cannot support such a showing. It was not Plaintiff's age that "made a difference" but his inability to perform either his previous or his desired job.

treatment putting the employer on notice or the good faith start of workers' compensation proceedings; and (4) consequent termination of employment." *Taylor v. Cache Creek Nursing Ctrs.*, 891 P.2d 607, 610 (Okla. Civ. App. 1994) (citing *Buckner v. Gen'l Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988)).

To "establish a consequent termination under Oklahoma law, a plaintiff must produce evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising her statutory rights." *Blackwell v. Shelter Mut. Ins. Co.*, 109 F.3d 1550, 1554 (10th Cir. 1997) (citing *Wallace v. Halliburton Co.*, 850 P.2d 1056, 1058 (Okla. 1993)). This is less than a "but for" standard but requires more than a showing that "exercise of [the employee's] statutory rights was only one of many possible factors resulting in [his] discharge." *Id.* (quotation omitted). Temporal proximity does not necessarily indicate retaliation: Oklahoma appellate courts have "determined there was no inference of retaliation" in cases where plaintiffs were "fired immediately after returning from a two-week, doctor-ordered disability leave" or "discharged six weeks after filing for workers' compensation." *Id.* at 1555 (discussing *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 464 (Okla. 1987) and *Taylor*, 891 P.2d at 610).

Plaintiff claims two emails demonstrate that he was terminated for his workers' compensation claim. First, he cites an email from December 1, 2016, claiming "Defendant's upper management explicitly discussed Plaintiff's pending workers' compensation claim when they gave final approval to terminate Plaintiff." Dkt. No. 38 at 13 (citing Dkt. No. 38-12). This is a mischaracterization of the evidence. The cited email simply states in pertinent part, "I know this case was complex, due to the WC claim, however, we did vet this with our COE partners and separation was supported." Dkt. No. 38-12. This does not indicate that Plaintiff's workers'

compensation claim was the focus of the discussion. Second, Plaintiff cites an October 20, 2016 email, which he characterizes as "ask[ing] when [SWBT] could terminate Plaintiff." Dkt. No. 38 at 13 (citing Dkt. No. 38-15). Plaintiff again takes liberties with the evidence. The cited email asks when Plaintiff should be removed from payroll based on the 90-day window that had already started. Dkt. No. 38-15. These two pieces of evidence—Plaintiff's only workers' compensation-related evidence—do not provide a foundation for a reasonable jury to conclude that Plaintiff's workers' compensation claim was a significant motivating factor in his discharge.

## CONCLUSION

IT IS THEREFORE ORDERED that the Motion for Summary Judgment [Dkt. No. 31] filed by Defendant Southwestern Bell Telephone Company is GRANTED.

DATED this 17th day of June 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE